UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,　　　　　　　　　　　　　Case No. 3:13-cv-905

　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION

$1,264,000.00 in U.S. Currency, et al.,

　　　　　Defendants

## I. BACKGROUND

On April 22, 2013, the government initiated this forfeiture action involving a $1,264,000.00 in cash seized from Ohio Scrap Corporation, located in Delta, Ohio. Todd Zappone and Carrie Zappone are the owners and operators of Ohio Scrap Corporation. The currency allegedly was the subject of "structuring" by the owners of Ohio Scrap Corporation in violation of 31 U.S.C. § 5324(a)(3). The claimants in this case include Ohio Scrap Corporation, their owners, and The Farmers & Merchants State Bank, which holds a perfected security interest in the business assets and inventory.

This was not the only litigation involving the Zappones. There were multiple cases involving all of the claimants in the Fulton County Common Pleas Court as well as the Bankruptcy Court in the Northern District of Ohio. Additionally, the Zappones initiated a *Bivens* action against the United States and numerous other individuals in this Court. *See Todd N. Zappone, et al. v. Richard Dailey, et al.*, Case No. 3:15-cv-2135 (N.D. Ohio).

In December 2013, the parties in this litigation entered into a partial settlement agreement whereby $500,000 of the currency was disbursed, with $400,000 applied to the amount owed to Farmers and $100,000 applied to the Zappones' 2013 income tax liability. (Doc. No. 31-1). In

return, Farmers agreed to subordinate its security interest in the balance of the currency with the understanding the balance would be applied to the Zappones' tax obligations for 2009 through 2012. Farmers also agreed to enter into a forebearance agreement to allow the Zappones a window of opportunity to liquidate their business free from collection efforts as well as consenting to dismissal of Ohio Scrap's Chapter 11 bankruptcy proceeding. (*Id.*)

In February 2014, a forebearance and loan modification agreement was entered into among Ohio Scrap, Superior 24 Hr. Towing & Road Service, the Zappones, and Farmers. (Doc. No. 96-2). The forebearance agreement "set forth the Bank's commitment to hold off on collection efforts for six months while the Zappones tried to sell their business." (Doc. No. 94 at p. 14).

The parties appeared before the Honorable David A. Katz on September 21, 2015, in an attempt to resolve the remaining claims in the forfeiture action. (Non-document entry dated October 13, 2015). Judge Katz placed the terms of the settlement on the record. The entry following the conference noted the case was settled and a dismissal entry was due by November 30, 2015. (*Id.*)

In December 2015, I extended the deadline for dismissal or a status report to February 15, 2016. (Doc. No. 63). In late February 2016, the Plaintiff advised the Court the Zappones had retained new counsel and were not inclined to sign the written settlement agreement circulated to all parties regarding the September mediation. (Doc. No. 64). Unable to resolve the dispute, Farmers moved to enforce the settlement agreement. Following briefing, I held an evidentiary hearing on July 19, 2016.

Accordingly, the matter is before me on Claimant Farmers & Merchants State Bank's motion to enforce the settlement agreement. (Doc. No. 86). Responsive pleadings to this motion include a response by Dunn Counsel PLC (Doc. No. 88), and those of Claimants Ohio Scrap Corporation, Carrie Zappone, and Todd Zappone. (Doc. No. 92). Following the evidentiary hearing, post-hearing briefing was filed by the Claimant lenders (Doc. No. 96 and 100), as well as the Claimant

2

borrowers (Do. No. 98).   Also pending on the docket are the Zappones' and Ohio Scrap's motion for summary judgment (Doc. No. 58), filed prior to the mediation, and motions for charging liens. (Doc. Nos. 69 and 89).

## II. APPLICABLE LEGAL STANDARD

The Sixth Circuit "has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it" " 'even if that agreement has not been reduced to writing.' " *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (quoting *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282-83 (6th Cir. 1986) and *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)).

The validity of a settlement agreement was addressed by the Sixth Circuit in *RE/MAX International, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-46 (6th Cir. 2001):

> Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). Ordinarily an evidentiary hearing is required where facts material to an agreement are disputed. *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir. 1973); *Aro Corp.*, 531 F.2d at 1372.      . . . .
>
> The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement. *Brock*, 841 F.2d at 154; *Kukla*, 483 F.2d 15 621 (observing that the power of the trial court to enforce a settlement agreement has been upheld even where the agreement has not been arrived at in the presence of the court nor reduced to writing).

Settlement agreements are governed by contract law and Ohio requires contracts be interpreted according to the "law of the place of the contract's making." *The Glidden Co. v. Kinsella*, 386 Fed. Appx. 535, 540 (6th Cir. 2010), citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997).

3

## III. DISCUSSION

Judge Katz conducted a mediation on September 21, 2015. At the evidentiary hearing, Kenneth Baker, counsel for Farmers testified as to what transpired prior to placing the terms of the settlement on the record:

> Judge Katz early on informed me that the Zappones not only wanted to try to settle this case, but to wrap up the entire proceedings, settle the entire case. I told Judge Katz I would not do that, that I did not come prepared for that, and that was the purpose of the mediation.
>
> Next, I met with Mr. Rojas, and the Zappones had consented to finally telling me the tax liability, so I then knew that I was getting approximately $90,000 as part of the settlement. I would waive my claim to the attorney's fees. And then once the settlement agreement had been signed, the parties would then try to work out settlement of the remaining parts of those claims.

(Doc. No. 94 at pp. 18-19).

At conclusion of the mediation, Judge Katz read the following into the record with counsel for all parties present:

The Court:   The matters were resolved on the following basis.

>   1. The government has agreed to pay and the claimants have agreed to accept in full and complete settlement of their claims for attorney's fees the sum of $140,000.
>   . . .
>
>   2. Of the balance remaining of the forfeited funds in the possession of the government, the sum of approximately $665,700 will be paid to the Internal Revenue Service on behalf of the Zappones.
>   . . .
>
>   Make that approximately $670,000. The balance remaining in the hands of the government from the forfeited funds will be approximately $90,000, and those remaining funds will be paid to Farmers & Merchants State Bank.
>   . . .
>
>   The next number. Who's going to draft something?
>   . . .
>
>   Counsel for the government will draft the settlement outlined above and provide copies to all parties and claimants, as well as to the Court.

|              | Next numbered paragraph, I think, is 4. In addition to the foregoing, Farmers & Merchants State Bank has agreed not to make any claims against the $140,000 payable for attorney fee reimbursement as outlined above and will dismiss the pending bankruptcy in which Ohio Scrap . . . Corporation is involved. |
|---|---|

Next numbered paragraph, I think, is 4. In addition to the foregoing, Farmers & Merchants State Bank has agreed not to make any claims against the $140,000 payable for attorney fee reimbursement as outlined above and will dismiss the pending bankruptcy in which Ohio Scrap . . . Corporation is involved.

Thereafter, counsel for the Zappones and counsel for the bank have agreed to work diligently on a global settlement of all remaining claims held by the bank as to which the Zappones are alleged to have liability.

Once the resolution of the bank's claims have been - - has been resolved, a mutual release will be prepared by Mr. Baker and approved by Mr. Dunn, at which time as part of the global settlement all liens held by the bank against assets of the Zappones and companies controlled by them will be released.

. . .

As part of the settlement and release aforesaid, the bank will agree to a termination of the Superior Towing bankruptcy.

Mr. Baker: And will cause the execution against three trucks held by the Fulton County Sheriff to be released.

. . .

Mr. Dunn: Also, this global settlement will satisfy the judgment that F & M Bank has against the Zappones.

Mr. Baker: Yes. Once we reach final resolution of all claims, there will be mutual releases, we'll give satisfaction of the judgment.

The Court: That's what's in the mutual releases.

Mr. Dunn: As part of that, F & M Bank will agree to dismissal of the Superior Towing, LLC bankruptcy. Did you already say that?

The Court: Yes, dismissal of the case in Wood County.

. . .

Mr. Dunn: Also, as part of the global resolution the bank's lien on the Zappones' house would be satisfied?

Mr. Baker: Absolutely.

. . .

The Court: The next number. The payment of the roughly - - or the estimated $670,000 as noted above will be payment in full of the Zappone's U.S. tax liabilities for the years 2009 through 2012.

Mr. Rojas: And Ohio Scrap Corporation.

The Court: Zappones and Ohio Scrap Corporation

Mr. Dunn: By tax liabilities, we're talking about tax, penalties, and interest?

5

| | |
|---|---|
| Mr. Rojas: | Yes. Yes. |
| The Court: | That is why I said tax liabilities. |

. . .

| | |
|---|---|
| Mr. Dunn: | One last point. This settlement does not preclude the Zappones from brining claims against the government or its employees unrelated to the forfeiture action. |
| Mr. Rojas: | That's correct. |

. . .

| | |
|---|---|
| The Court: | Anything else? |
| Mr. Dunn: | No. |
| Mr. Baker: | No. |

(Doc. No. 72, pp. 2-9).

At the evidentiary hearing, Baker testified as to the material terms of the settlement:

| | |
|---|---|
| Mr. Baker: | Pertaining to the forfeiture proceeding, the Government came up with a number for the tax liability for the Zappones. . . But in essence [the bank] was to get $90,000. The tax liabilities would be totally satisfied. And I would waive - - the Bank would waive any claim to try to seize the $140,000 that was coming to the Zappones for attorney's fees. . . as I was not willing to negotiate on the spot to try to settle the entirety of the Bank's judgment, I did agree, once the settlement agreement had been signed, to work with Mr. Dunn to try to resolve the balance of the claims. And if we could, we would sign mutual releases. |

. . .

Mr. Baker was also asked about the Bank's sale of three trucks in December of 2015 and its relationship to the settlement agreement placed on the record before Judge Katz and explained the following:

| | |
|---|---|
| Mr. Baker: | These were three trucks that were seized by the Fulton County Sheriff on the writ of execution that the Bank had filed probably a year before the settlement. The Bank held off scheduling the sale of those assets while attempting to work with the Zappones. But it was getting to the point where we wanted to move forward and get those assets sold. We were not certain that the Government would approve the settlement, and frankly, I had concern of delays. So I had the sale scheduled for a period of time off into the future where we could let the government come back and tell us whether the settlement was on or off. I also wanted to give the Zappones an opportunity to attend that sale if it took place and to purchase those vehicles for their own use. So prior to the sale we did send notice to the Zappons of the time, date, and place of the sale. It's my understanding the Zappones appeared at that sale |

6

and either through a company owned by them or their son they actually bought the trucks. . . .

Mr. Sandretto: What was your understanding as to how the receipt of the net proceeds of that vehicle sale impacted the Bank's claims?

Mr. Baker: Sure. Well, the entire proceeds were applied to reduce the Bank's judgment.

On cross-examination by the Claimants' counsel, Mr. Baker was asked about the scope of the settlement:

Mr. Whitaker: And one of the things he read into the record was that counsel for the Zappones and counsel for the Bank have agreed to work diligently on a global settlement of all the remaining claims held by the Bank as to which the Zappones have alleged liability. Isn't that correct?

Mr. Baker: That's correct.

Mr. Whitaker: And further down he says - - or you say into the record - - the Court says, "As part of the settlement and release aforesaid, the Bank will agree to a termination of the Superior Towing bankruptcy" if a global settlement was reached. Isn't that correct?
. . .

Mr. Baker: Yes. That was a separate bankruptcy proceeding from Ohio Scrap. There were two bankruptcy proceedings pending. I think they still are.

Mr. Whitaker: I'm just talking about, for the purposes of this agreement, it is a part of this agreement that - - as part of the negotiations, as part of the settlement and release, talking about the negotiations that Farmers has agreed to enter into, the Bank will agree to a termination of Superior Towing bankruptcy? That's what the transcript says; isn't that correct?

Mr. Baker: Yes. That's presuming we reached a settlement.

Mr. Whitaker: And then it says immediately afterwards - - you enter into the record as well, "And will cause the execution against the trucks held by the Fulton County Sheriff to be released;" isn't that correct?

Mr. Baker: Absolutely.

(Doc. No. 94, pp. 28-29).

A review of the record from the mediation and testimony at the evidentiary hearing establish the parties entered into a valid and enforceable agreement in which (1) the United States agreed to pay the Zappones $140,000.00 for settlement of their claims for attorney's fees; (2) the balance of forfeited funds, approximately $670,000.00, would satisfy the Zappone's tax liablities for 2009

7

through 2012; and (3) Farmers would receive the balance of the forfeited funds, relinquish claims against the $140,000.00 paid to the Zappones for attorney's fees, and consent to dismissal of Ohio Scrap's pending Chapter 11 bankruptcy. As noted by Judge Katz, "*Thereafter*, counsel for the Zappones and counsel for the bank have *agreed to work diligently on a global settlement of all remaining claims* held by the bank as to which the Zappones are alleged to have liability." (Doc. No. 72 at p. 5) (emphasis added).

While the Zappones and Ohio Scrap contend material terms included a global resolution and release of the trucks, I disagree. The parties agreed to work diligently on a global settlement but that language was aspirational and contingent upon completion of the three items referenced above. The Supreme Court of Ohio provides guidance on this determination:

> "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract."

*Rulli*, 79 Ohio St. 3d at 376, citing 1 Corbin on Contracts (Rev. Ed. 1993) 525, Section 4.1.

At the outset of this dispute, the Zappones argued a material term to the settlement included a thirty-day window to complete the settlement. There is no evidence of that requirement in the transcripts from mediation or from the testimony adduced at the evidentiary hearing. Whether the Zappones attended the mediation in person or not is of no consequence as they do not dispute they were represented by counsel. Counsel of record has authority to enter into a settlement agreement on behalf of their client. The Zappones' argument regarding the difference in the circulated written settlement agreement and the agreement placed on the record at the conclusion of the mediation is unpersuasive, as I have determined the material terms were clearly stated by Judge Katz on the record.

Finally, the Plaintiff moves for an award of reasonable attorney fees as a result of having to bring this action and moving to enforce the settlement agreement. In *Tocci v. Antioch University*, 967 F.Supp.2d 1176, 1201-03 (S.D. Ohio 2013), the determined the plaintiff's behavior amounted to bad faith conduct and awarded attorney's fees on that basis. Other courts have awarded attorney's fees where they were part of the settlement agreement. *Hitachi Medical Systems America, Inc. v. Livingston MRI, LLP*, No 5:09CV932, 2010 WL 1387301 *3 (N.D. Ohio 2010). Generally under the American Rule, the parties bear the burden of paying their respective attorney fees unless a rule or statute authorizes those fees. In this instance, there is no allegation of bad faith, therefore, I deny the Plaintiff's request for attorney's fees.

### IV. MOTIONS FOR RETURN

The Zappones and Ohio Scrap Corporation also move for return of $1,866,000.00 and various non-cash items seized by the United States or, in the alternative, move for an order directing the government to join those funds to this action. (Doc. No. 102). The Claimants also move for return of the cash property pursuant to Fed. R. Crim. P. 41(g). (Doc. No. 103). Claimants contend there was actually $3,150,000.00 in the safe taken by the Plaintiff. They seek return of the balance, $1,886,000.00, which they claim was not identified and in the control of the United States following the seizure. I find the Claimants' motions to be without merit.

First, having determined Farmers & Merchants State Bank is entitled to enforcement of the settlement agreement, all aspects of the forfeiture case are resolved, thereby rendering their requests moot. Second, under *Brown v. United States*, 692 F.3d 550, 552-53 (6th Cir. 2012), where there is an adequate remedy at law available to the claimant, they cannot avail themselves of the equitable remedy under Rule 41(g). That remedy was sought by the Claimants in their *Bivens* action. The Sixth Circuit affirmed Judge Zouhary's dismissal of the *Bivens* action thus bringing finality to that issue. *See Zappone v. United States*, 870 F.3d 551, 561 (6th Cir. 2017). Third, the United States denies having possession of the property Claimants seek to have returned. *See United States v. Obi*, 100 Fed. Appx.

9

498, 499 (6th Cir. 2004). Fourth, this Court is without *in rem* jurisdiction over the property as the United States has not executed a Warrant of Arrest *In Rem* pursuant to Supplemental Rule G(3)(c). Moreover, as noted by the Sixth Circuit in the Claimants' *Bivens* action, "while the purported owner of the property may intervene in the [forfeiture] action, he may not assert counterclaims against the United States." (*Id.*)

### V. CONCLUSION

For the reasons stated above, I grant Farmers & Merchants State Bank's motion to enforce the settlement agreement but deny an award of attorney's fees. (Doc. No. 86). The Claimants' motion for summary judgement (Doc. No. 58) is denied as moot. The motions for return (Doc. Nos. 102 and 103) are denied. Finally, with regard to the two motions for attorney charging liens, (Doc. Nos. 69 and 89), and in accordance with my order for extension (Doc. No. 91), the Claimants are granted fourteen days to submit their response.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge