UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

    Plaintiff,

v.

$1,264,000.00 in U.S. Currency,

    Defendant.

Case No. 3:13-cv-905

MEMORANDUM OPINION
AND ORDER

There currently are two motions for charging liens pending in this case. (Doc. No. 69 and Doc. No. 89). The movants, Dunn Counsel PLC and Robert J. Fedor, Esq., LLC, have submitted affidavits in support of their motions, including billing statements describing the services rendered and the amount billed. Dunn and Fedor assert their charging liens against a fund of $140,000, which was set aside as part of the parties' settlement of the primary dispute in this litigation, for the purpose of reimbursing attorney fees (the "Attorney Fee Fund"). I held a hearing on September 25, 2019, at which counsel for the parties appeared, as well as Carrie Zappone, on behalf of herself, Todd Zappone, and Ohio Scrap Corporation. At my direction, the parties submitted additional briefing following that hearing. (Doc. No. 136; Doc. No. 138; Doc. No. 139).

Ohio law permits an attorney to assert a charging lien against a monetary judgment awarded to the attorney's present or former client, on the theory the attorney's "services and skill created the fund" and that equity creates a right in the attorney to be paid, out of that fund, "fees earned in the prosecution of the litigation to judgment." *Cuyahoga Cty. Bd. of Commrs. v. Maloof Properties, Ltd.*, 968

N.E.2d 602, 605 (Ohio Ct. App. 2012) (quoting *Cohen v. Goldberger*, 141 N.E. 656 (Ohio 1923)). An attorney who "has been discharged as of the date of the judgment" also may assert a charging lien, "so long as counsel can demonstrate the significance his contribution has to that judgment." *Cuyahoga Cnty. Bd. of Commrs.*, 968 N.E.2d at 605.

The Zappones argue I should decline to exercise ancillary jurisdiction over the charging liens. (Doc. No. 136). This argument fails to acknowledge that the primary reason courts decline to exercise jurisdiction over an application for a charging lien is to "avoid interfering with the main case." Restatement (Third) of the Law Governing Lawyers § 42 (2000). Such interference is not an issue here, as the sole remaining matter to be decided is the proper allocation of the Attorney Fee Fund. Moreover, the Zappones fail to address the prejudice Dunn and Fedor likely would suffer if they had to begin anew with their efforts to collect their attorney fees.

"[U]ntil a judgment is fully executed, the court retains jurisdiction of the subject matter and the parties for the purpose of hearing any motion affecting such judgment, and if the attorney desires to have his lien established and declared against such judgment, he may apply to the court for that purpose. An attorney's lien is enforceable through the control the courts have of their judgments and records, and by means of their own process." *Fire Prot. Res., Inc. v. Johnson Fire Prot. Co.*, 594 N.E.2d 146, 149 (Ohio Ct. App. 1991) (citations and internal quotation marks omitted) (alteration in original). "[W]here the parties are not strangers to the suit, the compensation of the [movants] should be worked out by application to the court holding the fund, and in which the services were rendered." *Id.* (quoting *Olds v. Tucker*, 35 Ohio St. 581, 584 (Ohio 1880)) (internal quotation marks omitted); *see also Fire Prot. Res.*, 594 N.E.2d at 150 (noting one of the "primary considerations" in attorney charging lien cases is "the elimination of unnecessary and duplicative litigation").

I have proper jurisdiction over the parties in this case and over the motions for charging liens. The fact that Dunn and Fedor may seek to include billings for work which does not relate to the judgment obtained in this case does not mean I do not have jurisdiction over their motions. Rather, it simply means Dunn and Fedor are not entitled to assert a charging lien under Ohio law against the Attorney Fee Fund as to those fees.

As I previously noted, charging liens are limited to the attorney's specific work in obtaining the judgment at issue, as Ohio law does not "authorize the reimbursement of all monies owed to an attorney, whether related to the judgment or not." *Petty v. Kroger Food & Pharmacy*, 844 N.E.2d 869, 872 (Ohio Ct. App. 2005). The Zappones argue I should refuse to allow the charging liens asserted by Fedor and Dunn because the attorneys failed to expressly identify which billing entries applied to work done in Case No. 3:13-cv-905, as opposed to work done in other cases, and therefore the motions fall short under the principles set forth in cases like *Petty*. (Doc. No. 136 at 6-7).

Ohio law, however, does not limit an attorney to using a charging lien to recover fees billed for a precise matter; instead, it permits the attorney to assert a charging lien for fees the attorney earned in contributing to the "overall settlement." *Galloway v. Galloway*, 80 N.E.3d 1225, 1232 (Ohio Ct. App. 2017) (affirming trial court order including attorney fees from multiple lawsuits within a charging lien because "the defense of the related lawsuits [was] intertwined to achieve Galloway's overall goal of obtaining and retaining the real properties at issue"). The Zappones fail to disprove the assertions by Fedor and Dunn that their work on tax, criminal, and bankruptcy matters, as well as on related litigation against Fifth Third Bank, was necessary to obtain the final resolution of the Zappones' overall goal of recovering the funds the government sought under 31 U.S.C. § 5317(c)(2).

Dunn asserts his firm billed a total of 556.23 hours, with a value of $147,562.25. (Doc. No. 69-1 at 34). He acknowledges he received payments totaling $80,000, (Doc. No. 69 at 2), and seeks a charging lien for the remaining $67,562.25. As I indicated during the September 25 hearing, the

3

documents Dunn provided in support of his motion contain billing entries for work which he fails to establish was reasonably connected to obtaining a judgment in the Zappones' favor:

- The October 29, 2015 billing entry describes a telephone conference with "L. Acker" concerning a malpractice claim;
- The November 4, 2015 billing entry describes an office conference regarding a potential claim against Fedor's firm;
- The December 7, 2015 and December 14, 2015 billing entries describe correspondence to and with "L. Acker," as well as work on a malpractice claim;
- The February 24, 2016 and March 3, 2016 billing entries describe work on Dunn's motion for a charging lien.

(Doc. No. 69-1 at 31-34). These billing entries total $3,910.50 in fees, which I exclude from Dunn's request, leaving a total of $63,651.75.[1]

Fedor asserts his firm billed 714.50 hours, totaling $148,860.00 in fees. (Doc. No. 89-1 at 34). He acknowledges the Zappones paid a total of $44,000.00, (Doc. No. 89 at 2), and seeks a charging lien for $104,860.00 in attorney fees.[2] Like Dunn, Fedor includes billing entries for work which he fails to establish was reasonably connect to obtaining a judgment in the Zappones' favor. Fedor's submission contains six billing entries for work on his motion to withdraw as counsel, one entry regarding his review of a "Tort Claim rejection," and four entries for work concerning the charging liens. (Doc. No. 89-1 at 34). These billing entries total $1,917.00 in fees, which I exclude from Fedor's request, leaving a total of $102,943.00.[3]

Dunn also seeks reimbursement from the Attorney Fee Fund for out-of-pocket expenses he incurred while representing the Zappones, in a total amount of $5,237.57. (Doc. No. 69 at 3; Doc.

---

[1] $434.50 plus $474.00 plus $79.00 plus $355.50 plus $1,540.50 plus $1,027.00 equals $3,910.50. (Doc. No. 69-1 at 31-34). $67,562.25 minus $3,910.50 equals $63,651.75.

[2] In his motion, Fedor seeks to recover $105,174.78. (Doc. No. 89 at 4). He does not explain how he calculated this amount and I conclude he has failed to show he is entitled to that increased sum.

[3] $100 plus $50 plus $200 plus $150 plus $80 plus $75 plus $56 plus $616 plus $150 plus $176 plus $264 equals $1,917. (Doc. No. 89-1 at 34). $104,860 minus $1,917 equal $102,943.

4

No. 69-1 at 36-37). Meanwhile, Fedor seeks reimbursement of out-of-pocket expenses in the amount of $3,534.94. (Doc. No. 89-1 at 34-35). I conclude Dunn and Fedor fail to identify a basis for these requests, as Ohio law permits an attorney to assert a charging lien to recover fees, not expenses. *See, e.g., Cuyahoga Cnty. Bd. of Commrs.*, 968 N.E.2d at 605.

Finally, Dunn claims he is entitled to recover against the Attorney Fee Fund because he has received a judgment from a Michigan state court on claims of breach of contract, account stated, and quantum meruit. (Doc. No. 138 at 5-10). To the extent he seeks to use this judgment to establish the amount to which he believes he is entitled, I am not persuaded. Dunn's motion here is one for an attorney charging lien; he has not filed a complaint seeking to enforce a judgment. Nor does this judgment require me to allow Dunn to claim a lien for every billing entry he has submitted. (*See* Doc. No. 69-1 at 5-46). As I stated above, Ohio law permits an attorney to assert a charging lien for fees earned in obtaining a judgment on a client's behalf and does not allow that attorney to include fees charged for unrelated matters.

While the Attorney Fee Fund contains $140,000, the total permitted value of Dunn and Fedor's fee claims is $166,594.75. Where, as here, there are multiple charging liens which exceed the available funds, Ohio law authorizes a court to award to each claimant a proportionate percentage of the proceeds of the judgment. *Walcutt v. Huling,* 5 Ohio App. 326 (Ohio Ct. App. 1913). Fedor's fees account for 61.79% of the total fees claimed, while Dunn's fees amount to 38.21% of the total.[4] Therefore, I conclude Fedor is entitled to payment of $86,506.00 from the Attorney Fee Fund, and Dunn is entitled to payment of $53,494.00 from the Attorney Fee Fund.[5]

---

[4] Fedor's permitted fees ($102,943.00) plus Dunn's permitted fees ($63,651.75) total $166,594.75. $102,943.00 divided by $166,594.75 equals 0.6179, or 61.79%. $63,651.75 divided by $166,594.75 equals 0.3821, or 38.21%.

[5] $140,000 multiplied by 61.79% equals $86,506.00. $140,000 multiplied by 38.21% equals $53,494.00

For these reasons, I grant Fedor's motion, (Doc. No. 89), in part and deny it in part, and grant Dunn's motion, (Doc. No. 69), in part and deny it in part.

So Ordered.

                                                             s/ Jeffrey J. Helmick
                                                             United States District Judge